**FILED**

JUL 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

BRENNAN TITLE COMPANY,          )
   Plaintiff,          )
                 FILED    ENTERED
VS.          )          LODGED    RECEIVED N
                                                                   Case: 1:07-mc-00299
RAMONA KELLY          )          Assigned To : Unassigned
               JUL 1 3 2007          Assign. Date : 7/20/2007
DARRIT DOUGLAS          )          Description: Miscellaneous
               AT GREENBELT )
            CLERK U.S. DISTRICT COURT )
              DISTRICT OF MARYLAND )
JOHN OLUFEMI TAYLOR          ) DEPUTY
   Defendants          )

**ORDER APPOINTING RECEIVER**

      On July 6, 2007, the Application of plaintiff, Brennan Title Company for

appointment of a Receiver came on for hearing. Having considered the testimony, the

evidence, and the applicable authorities, the Court has determined that good cause exists

to appoint a Receiver with powers as hereinafter set forth, no bond is required, and John

T. Brennan is qualified to act as receiver in this case. It is, therefore, ORDERED that:

1      John T. Brennan is appointed receiver in this action.

2.     The receiver shall be authorized to take immediate possession of all property,

        assets and estates of every kind whatsoever and wheresoever located,

        belonging to or in the possession of Ramona Kelly ("Kelly"), Darrit Douglas

        ("Douglas"), John Taylor ("Taylor"), Jubilee Investments (collectively

        "defendants"), and any other business enterprise or activity of any of the

        defendants in this action, including, but not limited to, all offices maintained

        by any or all of them, all rights of action, books, papers, data processing

        records, evidences of debt, bank accounts, savings accounts, certificates of

        deposit, stocks, bonds, debentures and other securities, mortgages, furniture,

fixtures, office supplies and equipment, accounts, contract rights, general intangibles and payment intangibles, all proceeds thereof, and all writings which document any of them including, without limitation, written agreements, purchase orders, invoices, receipts, checkbooks, check registers, passbooks, journals, ledgers and books of account; identity and account information for Title and Escrow companies from which defendants receive or have received payments or other data used in or related to the defendants, and all real property wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court.

3.    Jubilee Investments, Kelly, Douglas, and Taylor shall deliver forthwith all such property and monies, along with books and records related thereto, to the receiver, and shall forthwith grant to the receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of Jubilee Investments, Kelly, Douglas, and Taylor;

4.    All banks, brokerage firms, financial institutions, and other business entities which have possession, custody or control of any assets, funds or accounts in the name of, or for the benefit of, Jubilee Investments, Kelly, Douglas, or Taylor shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the receiver.

5.    Title to all property, real or personal, all contracts, rights of action and all

2

books and records of Jubilee Investments, Kelly, Taylor, and Douglas,

wherever located within or without this state, is vested by operation of law in

the receiver.

6.    No bank, savings and loan association, other financial institution, or any other

person or entity shall exercise any form of set off, alleged set off, lien, or any

form of self—help whatsoever, or refuse to transfer any funds or assets to the

receiver's control without the permission of this Court;

DUTIES OF RECEIVER: The receiver is granted the following powers and
duties:

a.  To enter the premises commonly known as 500 Pine Road, Fort

Washington, Maryland 20744, in order to take possession of the assets of

John Taylor and Jubilee Investments;

b.  To enter the premises commonly known as 220 Surrey Circle Dr., Fort

Washington, Maryland 20744, in order to take possession of the assets of

Darrit Douglas;

d.  To take possession of all bank accounts of Jubilee Investments, Taylor,

Douglas, or Kelly, in their capacity as owner of either such entity or of any

other business enterprise, wherever located, and receive possession of any

money on deposit in said bank accounts, and the receiver's receipt for said

bank accounts or said funds shall discharge the depository bank from

further responsibility for accounting to the account holder for funds for

which the receiver shall give his receipt.

e.  To demand, collect and hold all accounts receivable of defendants,

whether in his capacity as owner of Jubilee Investments or otherwise, and

3

all proceeds thereof

f.  To present for payment any checks, money orders, negotiable instruments or commercial paper by means of which defendants are compensated for products or services which they provide, and to endorse the same and collect the proceeds thereof, such proceeds to be deposited in the Cash Collateral Account described in Subparagraph (g), and thereafter used and maintained as elsewhere provided herein;

g.  To open and utilize bank accounts for receivership funds, including a separate account, to be denominated "Cash Collateral Account," for the initial deposit of proceeds of the accounts receivable and other items described in Subparagraphs (d), (e) and (f);

h   In the receiver's sole discretion, to contact any accounts receivable debtors of defendants or any real estate broker of Taylor or otherwise ("Account Receivable Debtors"), in order to instruct them to send no further payments to defendant, but rather to the receiver.

i.  If there is insufficient insurance coverage on the Collateral, the receiver shall have thirty (30) working days to procure such insurance, *provided the receiver has funds available to do so during said period*. The receiver shall not be personally responsible for claims that would be covered by such insurance, or for the procurement of such insurance.

To compromise debts of defendants, including Taylor in his capacity as owner of Jubilee Investments or any other business enterprise, and to do all things and to incur the risks and obligations of similar businesses and

4

enterprises; provided however, that no such risk or obligation shall be personal to the receiver, but shall be the risk or obligation of the receivership estate.

k. To execute and prepare all documents and to perform all acts, either in the name of defendant or in the receiver's own name, as the circumstances may require, which are necessary or incidental to preserving, protecting, managing and controlling the Collateral.

To employ or engage any person or firm to perform the functions described in subparagraphs (a) through (k);

m. To employ or engage providers of bookkeeping or accounting services which the receiver deems necessary to assist him in the discharge of his duties;

n. To engage persons in the receiver's discretion to assist the receiver in carrying out the receiver's duties and responsibilities, including, but not limited to, the United States Marshals Service or a private security firm;

o. To pay and discharge out of the funds coming into his hands all the expenses of the receivership and the costs and expenses of performing the functions described in subparagraphs (a) through (n);

p. To expend funds to purchase merchandise, materials, supplies and services as the receiver deems necessary and advisable to assist him in performing his duties and to pay therefor the ordinary and usual rates and prices out of the funds that may come into the possession of the receiver;

q. To borrow such funds from plaintiff as may be necessary to satisfy the

5

costs and expenses of the receivership, to the extent that cash, or cash derived from the assets of which the receiver takes control is insufficient to satisfy such costs and expenses. All sums the receiver may borrow pursuant to this paragraph shall be deemed advances to protect the assets of which the receiver takes control. The receiver is further authorized to issue and execute such documents as may be necessary to evidence and secure the obligation to repay the advances;

The funds coming into possession of the receiver and not expended for any of the purposes herein authorized, the receiver shall hold for the payment of the judgment herein, including any past or future awards to plaintiff for costs and attorney's fees, subject to such orders as this Court may hereinafter issue as to the disposition of such funds.

s   To file, within thirty (30) days after the effective date of this appointment, an inventory setting forth a list of all assets, documents and records of which the receiver has taken possession pursuant to his appointment, and to file a supplemental inventory if he later takes possession of additional items other than Cash Collateral

t.  To prepare monthly accounts pertaining to the receivables, their proceeds and any Cash Collateral of which the receiver takes control at the commencement of the receivership and upon completion, to mail such accounts to the parties and their counsel.

u.  To prepare periodic statements reflecting the receiver's fees and administrative costs and expenses incurred in the operation and

6

administration of the receivership estate. Upon completion of such

statements, and mailing the statements to the parties and their attorneys of

record, the receiver shall pay from estate funds, if any, the amount of each

statement. Despite the periodic payment of receiver's fees and

administrative expenses, such fees and expenses shall be submitted to the

Court for approval and confirmation in the form of either a noticed interim

request for fees, a stipulation among parties, or the receiver's Final

Account and Report; and

v   To generally do such other things as may be necessary or incidental to the

foregoing specific powers, directions and general authorities and to take

actions relating to the Collateral beyond the scope contemplated by the

provisions set forth above, provided the receiver obtains prior approval of

this Court for any actions beyond the scope contemplated herein

8.      **NON-INTERFERENCE WITH RECEIVER: IT IS FURTHER ORDERED**

that defendants Jubilee Investments, Taylor, Douglas, Kelly, and each and all

of their agents, representatives, attorneys, employees and any persons acting

in concert with them, are enjoined from:

a.  Interfering with the receiver, directly or indirectly, in the activities

described in Paragraph 7;

b.  Collecting or attempting to collect any accounts receivable of defendants

or Jubilee Investments;

c.  Expending, disbursing, transferring, assigning, selling, conveying,

devising, pledging, mortgaging, creating a security interest in or disposing

**7**

of the whole or any part of the property described in Paragraph 2 or any proceeds thereof, without the prior written consent of plaintiff or the Court; and

d. Doing any act which will, or which will tend to, defeat, prevent or hinder the preservation of any item described in Paragraph 2, or defeat or impair plaintiff's interest therein.

9. **TURNOVER: IT IS FURTHER ORDERED** that pending further order of this Court, defendants Jubilee Investments, Kelly, Douglas, Taylor, and their agents, employees, and all other persons with actual or constructive knowledge of this Order and their agents and employees (except plaintiff); shall:

a. Turn over to the receiver the possession of all items described in Paragraph 2, wherever located and in whatever mode maintained (including, without limitation, information contained on computers and any and all software relating thereto as well as all banking records, statements and cancelled checks); and

b. Turn over to the receiver all proceeds derived from the accounts receivable of defendant Jubilee Investments, wherever and in whatsoever mode maintained.

10. In the event that the Receiver discovers that funds of Jubilee Investments, Kelly, Douglas, or Taylor have been transferred to other persons or entities, the receiver shall apply to this Court for an Order giving the receiver possession of such funds and, if the receiver deems it advisable, extending this

8

receivership over any person or entity holding such funds;

11.  Immediately upon entry of this Order, the Receiver may take depositions upon oral examination of parties and non-parties subject to two (2) business days notice. These depositions may be taken telephonically. In addition, immediately upon entry of this Order, the receiver shall be entitled to serve interrogatories, requests for the production of documents and requests for admissions. The parties shall respond to such discovery requests within five (5) business days of service. Service of discovery requests shall be sufficient if made upon the parties by facsimile or overnight courier. Depositions may be taken by telephone or other remote electronic means.

12.  No bond shall be required in connection with the appointment of the receiver. Except for an act of gross negligence, the receiver shall not be liable for any loss or damage incurred by Jubilee Investments, Kelly, Douglas, or Taylor or any other person, by reason of any act performed or omitted to be performed by the receiver in connection with the discharge of the receiver's duties and responsibilities;

13.  DISCHARGE: IT IS FURTHER ORDERED that, immediately upon the satisfaction of all judgments in which any party defendant is a judgment debtor, including all past and future awards to those plaintiffs of attorneys' fees or costs; or upon the completion of a valid sale or other disposition of the Collateral, as the case may be, and without further order of the Court, the receiver shall relinquish possession and control of the items described in Paragraph 2 to defendants if the judgment is satisfied, to the successful bidder

9

at any sale of the any of the assets, whether plaintiff or another party, pending

approval of the receiver's final account and report. Upon relinquishing

possession and control of the items described in Paragraph 2, the receiver

shall be discharged from all further duties, liabilities, and responsibilities

relating to such items except to render his final account and report

14.    Service of this Order shall be sufficient if made upon Jubilee Investments,

       Kelly, Douglas, or Taylor or counsel by facsimile or overnight courier;

15.    IT IS FURTHER ORDERED that the receiver or plaintiff may at any time

       apply to this Court for any further instructions or powers necessary to enable

       the receiver to perform his duties properly.

   DONE AND ORDERED this ____th of July, 2007.

                                           _____
                                           UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

BRENNAN TITLE COMPANY,       )
5865 Allentown Road              )
Camp Springs, Maryland 20746   )
  Plaintiff,                    )
                               )
VS.                          )  No. **PJM 07 CV 0 9 8 8**
                               )
RAMONA KELLY             )
19713 Crystal Rock Dr., No. 24   )
Germantown, Maryland 20874    )
                               )
DARRIT DOUGLAS          )
220 Surrey Circle Dr.           )
Fort Washington, Maryland 20744  )
                               )
JOHN OLUFEMI TAYLOR       )
t/a Jubilee Investments Co.       )
500 Pine Rd.                  )
Fort Washington, Maryland 20744  )

## COMPLAINT

      Brennan Title Company (hereinafter "BTC"), Plaintiff, complains against

Ramona Kelly, Darrit Douglas, and John Olufemi Taylor t/a Jubilee Investments Co. as

follows:

### I.
### PARTIES

      1.      BTC is a Maryland corporation with its principal place of business

in Camp Springs, Prince George's County, Maryland.

      2.      On information and belief, Ramona Kelly ("Kelly") is a citizen of

Maryland.

      3.      On information and belief, Darrit Douglas ("Douglas") is a citizen

of Maryland.

4.    On information and belief. John Olufemi Taylor ("Taylor") is a citizen of Maryland and trades under the name Jubilee Investments Co.

## II.
## JURISDICTION AND VENUE

5.    This Court has jurisdiction under 18 U.S.C.A. § 1964(c).

6.    Venue in this Court is proper because the defendants reside in Maryland.

## III.
## FACTS

7.    On May 10, 2006, AWS Capital Investments, LLC (hereinafter, "AWS") put a rowhouse known as 701 Hamilton Street, N.W., Washington, D.C. (hereinafter. the "Property") on the market for $549,000.

8.    On July 28, 2006, the property was re-listed with a different real estate agent and broker and placed on the market for $578,000.

9.    On October 12, 2006. AWS entered into a contract to sell the Property to Ramona Kelly and Ernest Travers for $578,000.

10.    On information and belief, the Property was not worth more than $500,000 at the time.

11.    Defendant Taylor, who operates under the trade name Jubilee Investments Co., was the real estate agent for Ramona Kelly and Ernest Travers.

12.    The contract between Kelly/Travers and AWS called for AWS to pay $71,500 to Jubilee Investments Co.

13.    On information and belief, Jubilee Investments Co. had performed no services nor provided anything of value to AWS or Kelly/Travers.

2

14.    Travers surrendered or assigned his interest in the contract to purchase the Property to Kelly.

15.    On information and belief, defendants Douglas and Taylor conspired with Kelly to obtain a loan by means of false representations. Kelly applied for a loan through a mortgage broker, Bukola Ogundairo, who worked for Premier Mortgage Solutions, Inc.

16.    On her loan application, Kelly falsely stated that she was employed by Health Net Federal Services, and had a monthly income of $11,500. In fact, Kelly was not employed by Health Net Federal Services and, on information and belief, Kelly did not have a monthly income of $11,500.

17.    In reliance on Kelly's false representations, Long Beach Mortgage, from its offices in Illinois, (which funded both the first and second mortgages) wired $578,000 to BTC's account at BB&T, a federally insured financial institution. These funds were for loans in the amount of $462,400 (secured by a first deed of trust) and $115,600 (secured by a second deed of trust).

18.    On or about November 13, 2006, at its offices located at 5100 Wisconsin Avenue, Suite 514, Washington, D.C., BTC conducted the real estate settlement in which Kelly purchased the Property.

19.    At settlement, Kelly signed an affidavit falsely reaffirming that her monthly income was $11,500 and representing that she intended to occupy the Property as her residence, and would occupy the property "during the 12 month period immediately following the loan closing". In fact, she did not do so and never intended to do so.

20.     At settlement, Kelly received and reviewed a settlement statement indicating that $113,779.24 had been paid on her behalf for the purchase of the property.

21.     Kelly signed a "Certification" providing, "I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction."

22.     At each of the settlements, Kelly signed a certification that provided, *inter alia*, "the settlement is not complete until the following conditions have been met: (a) All funds in the form of certified funds have been received and have cleared our escrow account."

23.     At settlement, Kelly further agreed in writing to correct any errors within ten days after being notified of the error, and to be responsible for the cost of correcting any such error, including attorney's fees and costs.

24.     Following settlement, a BTC employee erroneously sent a check for the $113,779.24 proceeds from the second mortgage to Kelly in Maryland rather than applying the funds to Kelly's purchase of the Property.

25.     Kelly knew that the $113,779.24 had already been credited to her purchase of the Property, that she had no right to receive these funds, and that her receipt of the funds would make the representations she had made at settlement untrue.

26.     Despite her knowledge that she had no right to receive the funds, with the intention to hinder, delay, or defraud BTC, Kelly endorsed the check and delivered it to Darrit Douglas in Maryland. On information and belief, Kelly used the mails and/or wire for the purpose of facilitating this fraudulent transfer.

4

27.    Kelly did not receive reasonably equivalent value in exchange for the $113,779.24 she delivered to Douglas.

28.    Douglas endorsed the check and deposited it in his account at M&T Bank, a federally insured financial institution.

29.    On information and belief, Douglas and Kelly used the funds in connection with other similar fraudulent transactions with Taylor, including the purchase of property located at 8803 Carpenters Hall Drive, Lorton, Virginia.

30.    On February 21, 2007. BTC's General Counsel, Susan Chartier, notified Kelly and Douglas of the error and requested the return of the funds.

31.    Kelly and Douglas have failed to return the funds.

32.    In furtherance of their scheme to defraud and to lull BTC into inaction, Douglas communicated with Quinn O'Connell, manager of BTC's office in Washington, D.C., via telephone and "text messaging," between Maryland and the District of Columbia.

### IV.
### COUNT I
### R.I.C.O.

33.    BTC incorporates Paragraphs 1 through 31.

34.    In connection with and in furtherance of the fraudulent scheme set forth above, defendants utilized the United States mails and wires on at least two occasions within a period of twelve months and have thus engaged in a pattern of racketeering activity.

35.    Defendants also knowingly executed a scheme or artifice to defraud a financial institution and/or to obtain the moneys, funds, or other property

owned by. or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises in violation of 18 U.S.C. § 1343.

36.    Defendants were separate enterprises engaged in and affecting interstate commerce. All defendants, collectively and in the aggregate. were a separate enterprise engaged in and affecting interstate and foreign commerce. They used the sales proceeds derived from the racketeering activity in the operations of defendant Jubilee Investments and defendant Douglas, in satisfaction of their debts, and in the operations of the combined enterprise in violation of 18 U.S.C.A. § 1962(a). All defendants conducted the affairs of the combined enterprise through a pattern of racketeering activity in violation of 18 U.S.C.A. § 1962(c). All defendants conspired to commit these violations, thus violating 18 U.S.C.A. § 1962(d).

## V.
## COUNT II
## BREACH OF CONTRACT

37.    BTC incorporates paragraphs 1 through 36.

38.    Kelly breached her contract with BTC by failing to return the $113,608.37 after being notified of the error.

39.    As a result of Kelly's breach, BTC incurred damages of $113,608.37, plus attorney's fees, costs, and expenses, for which it now sues.

## VI.
## COUNT III
## UNJUST ENRICHMENT

40.    BTC incorporates paragraphs 1 through 39.

41.    Defendants were unjustly enriched by receiving $113,608.37 under such circumstances that in good conscience they should make restitution. BTC sues for this restitution.

6

42.    BTC further seeks imposition of a constructive trust to prevent

Defendants from being unjustly enriched.

## VII.
## COUNT IV
## FRAUD

43.    BTC incorporates paragraphs 1 through 41.

44.    Douglas, with actual or constructive knowledge that the check to

Kelly was written in error and that she was not entitled to a check for $113,608.37,

cashed the check for the purpose of hindering, delaying, and defrauding BTC. As a result,

BTC has sustained damages of $113,608.37.

45.    BTC is entitled to an award of punitive damages of $113,608.37

against Defendants to punish them for their wrongful and fraudulent conduct and to serve

as an example to deter others from similar conduct.

## VIII.
## COUNT V
## CONSPIRACY

46.    BTC incorporates paragraphs 1 to 45.

47.    Defendants entered into a civil conspiracy to assign, dispose of,

conceal, or remove BTC's funds from Kelly's control with intent to defraud BTC. As a

result of the unlawful actions taken pursuant to this conspiracy, the defendants are each

agents of one another and are jointly and severally liable to BTC for all of the acts and

omissions enumerated above.

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Grant a temporary restraining order, preliminary injunction, and

final Judgment permanently enjoining (A) Ramona Kelly, Darrit Douglas, John Taylor,

Jubilee Investments their agents, servants, employees, attorneys, and all persons in active

7

concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from:

      A. transferring, changing, wasting, dissipating, converting, concealing or otherwise disposing of in any manner, any funds, assets, claims, or other property or assets owned or controlled by or in the possession or custody of such or

      B. transferring, assigning, selling, hypothecating, or otherwise disposing of any assets of Ramona Kelly, Darrit Douglas, John Taylor, Jubilee Investments their agents, servants, employees, attorneys.

      2.     Grant a temporary restraining order, preliminary injunction, and final Judgment requiring Defendants Ramona Kelly, Darrit Douglas, John Taylor, and Jubilee Investments to disgorge an amount equal to the funds and securities they obtained illegally as a result of the violations alleged herein, plus prejudgment interest on that amount.

      3.     Issue an order directing Ramona Kelly, Darrit Douglas, John Taylor, and Jubilee Investments to prepare and present to the Court and Brennan Title Company within thirty (30) days from the entry of said order, a sworn accounting of all of the proceeds collected by the defendants from the activities described in the Complaint.

      4.     Enter judgment in favor of Brennan Title Company against Ramona Kelly, Darrit Douglas, John Taylor, and Jubilee Investments, jointly and severally, for $113,608.37 actual damages and $100,000 punitive damages, plus attorney's fees, costs of court, pre-judgment and post-judgment interest.

5.     Grant such other and further relief as this Court may determine to be just, equitable and necessary, including, but not limited to, (i) a freeze of assets, (ii) the acceleration of discovery including the forthwith production of books and records, (iii) the appointment of a receiver, (iv) an order requiring the execution of consent directives to recover fraudulently transferred money and property.

6.     Retain jurisdiction over this action in order to implement and carry out the terms of all orders, and decrees that may hereby be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Respectfully Submitted,

By: _____
John T. Brennan
Federal ID No. 15845
2124 Priest Bridge Dr., Ste. 12
Crofton, Maryland 21114
(410) 721-9090
Fax: (410) 224-8343
tbrennan@brennan-law.us

*Attorneys for Plaintiff,*
*Brennan Title Company*

9